CHARLES P. BERKEY, Appellant, *v.* THIRD AVENUE RAILWAY COMPANY, Respondent.

MINNIE BEST BERKEY, Appellant, *v.* THIRD AVENUE RAILWAY COMPANY, Respondent.

First Department, July 6, 1926.

Corporations — torts — liability of dominant street railway for negligent injury on line it controls — complaint should not have been dismissed in action for negligence — facts show defendant railway dominated, controlled and operated railway of another corporation on which accident happened — evidence of actual conditions in addition to mere evidence of separate organization should have been admitted.

This is an action to recover for injuries to a passenger on a street car running on one of the lines operated by the defendant corporation. The corporation owning the line on which the accident occurred maintained a separate existence. It was controlled absolutely by the defendant through stock ownership, owner-

ship of bonds and as creditor of a large floating indebtedness and was operated by the defendant who hired all employees, maintained the equipment, and accepted and disbursed the receipts and it was in every way part of the defendant's plant, with the exception that a bare legal separate organization was maintained.

Under the circumstances stated, the defendant, a dominant corporation, is liable for the injuries committed on the lines of its subsidiary, or at least that is a question of fact for the jury to decide, and the complaint should not have been dismissed. The issue was not to be determined solely by papers introduced in evidence purporting to show that defendant's subsidiary was maintained as a separate organization, but the jury should have been permitted to consider the actual facts on the question of the liability of the defendant.

APPEAL by the plaintiff in each of the above-entitled actions from a judgment of the Supreme Court in favor of the defendant in each action, entered in the office of the clerk of the county of New York on the 7th day of February, 1925, upon the dismissal of the complaint at the close of the entire case.

*R. Randolph Hicks* of counsel [*George F. Canfield* and *Thomas F. Compton* with him on the brief; *Satterlee & Canfield,* attorneys], for the appellants.

*Addison B. Scoville* of counsel [*A. C. Mayo* with him on the brief; *Alfred T. Davison,* attorney], for the respondent.

McAVOY, J. The learned trial court dismissed the plaintiffs' complaints in these actions on the ground that the defendant was not responsible for the accident here, because, apparently, the court considered that this defendant was not operating the car from which the plaintiff Minnie B. Berkey was alighting at One Hundred and Seventeenth street and Broadway, and while so alighting was injured because of the condition of the street. It appears that she was caused to fall by reason of an excavation to a depth of twenty-six inches from the steps of the car to the ground, and besides because the ground thereabout was covered with stones and boulders. There is no question that the railway company operating the cars at that point could have been found negligent by the jury, and that plaintiff was free from contributory negligence is quite apparent from a reading of the record.

The plaintiffs contend that the learned trial court should have left to the jury the question as to whether or not the car was, in fact, operated and controlled by the Third Avenue Railway Company, and should have instructed them that if they found that the defendant was both the dominant and controlling corporation and used the Forty-second Street, Manhattanville and St. Nicholas Avenue Railway Company, which defendant contended was the operator, as an agency or instrumentality for carrying on its own

business, the defendant was liable to the plaintiff. While one corporation may carry on business through a corporation which it controls, without incurring responsibility, it may be on proper proof a question of fact whether the corporation which controls another and might use it to escape responsibility, is actually so carrying on its work as to be liable. The latest case upon the point is *Chicago, Milwaukee & St. Paul Railway Company* v. *Minneapolis Civic & Commerce Assn.* (247 U. S. 490). In that case the court (at pp. 500, 501) said: " Much emphasis is laid upon statements made in various decisions of this court that ownership, alone, of capital stock in one corporation by another, does not create an identity of corporate interest between the two companies, or render the stockholding company the owner of the property of the other, or create the relation of principal and agent or representative between the two. * * *

" While the statements of the law thus relied upon are satisfactory in the connection in which they were used, they have been plainly and repeatedly held not applicable where stock ownership has been resorted to, not for the purpose of participating in the affairs of a corporation in the normal and usual manner, but for the purpose, as in this case, of controlling a subsidiary company so that it may be used as a mere agency or instrumentality of the owning company or companies. *United States* v. *Lehigh Valley R. R. Co.*, 220 U. S. 257, 273, and *United States* v. *Delaware, Lackawanna & Western R. R. Co.*, 238 U. S. 516. In such a case the courts will not permit themselves to be blinded or deceived by mere forms of law but, regardless of fictions, will deal with the substance of the transaction involved as if the corporate agency did not exist and as the justice of the case may require."

We think that in this case there was sufficient evidence for a finding that the Third Avenue Railway Company made use of its stock ownership and control of what we will term the Forty-second Street Railway Company, not merely for the purpose of participating in its affairs, but for using it as a mere instrumentality to carry on defendant's business, and that the substance of the transaction involved is the operation by the Third Avenue Railway Company through a technical corporate organization known as the Forty-second Street, Manhattanville and St. Nicholas Avenue Railway Company, which as a matter of real fact has no separate operating existence.

There are various facts and circumstances which show that the Third Avenue Railway Company, which calls itself the Third Avenue Railway System, on its own line and the lines of its so-called subsidiaries, is really the operating company of this particular line

upon which ran the car from which the plaintiff Minnie B. Berkey alighted. Its annual report shows that the Third Avenue System is composed of the Third Avenue Railway Company and certain subsidiary companies in which subsidiaries is included the Forty-second Street Railway Company. It then sets forth: " The Third Avenue Railway Company controls all of the above corporations through ownership of stock and to arrive at the result of the operations it is necessary to consolidate the income accounts and the balance sheets of all the corporations and eliminate the inter-company transactions so that all duplications may be avoided. This explanation is made in order that there may be no misunder-standing in considering the statements appearing in this report."

Its very report shows that the Third Avenue Railway Company is the dominant organization of the system. It owns not only a controlling interest in the stock of the Forty-second Street Railway Company, but also its second mortgage bonds, and the large floating indebtedness of the Forty-second Street Railway Company is due to the Third Avenue Company. The same officers, executive committee and directors of the Third Avenue Railway Company hold identical positions in the Forty-second Street Railway Company. The general manager of the one had charge of the superin-tendent of operation of the other, who in turn controlled the operating men on the cars. The cars of both the Third Avenue Railway Company and the Forty-second Street Railway Company were marked with the words, " Third Avenue System," and there was no marking thereon to indicate what particular subsidiary company owned the franchise under which the cars were being operated. The Third Avenue Railway Company con-tracted with the Edison Company of New York for the power furnished for the Forty-second Street Railway System, and was also responsible for the contract and paid the Edison bills with its own checks. The purchasing agency for the entire system paid the bills for all expenses, salaries of claim agents, and for services and materials. The Third Avenue Railway Company also pur-chased and owned all the cars which were operated over the lines of the system, and charged the Forty-second Street Railway Com-pany various car fees for the use of the cars. One paymaster paid the motormen and conductors of the Forty-second Street Railway Company and the Third Avenue Company jointly.

The legal department for the whole system, including this technical organization known as the Forty-second Street Railway Company, was maintained by the Third Avenue Railway Company. There was only one accounting department for the entire system and one claim department, all of whose expenses were paid by

the Third Avenue Railway Company checks. Passengers were entitled to be transferred from the Third Avenue Railway Company to the Forty-second Street Railway Company's line. Income from the latter company from the operation was payable to the Third Avenue Railway Company. Receipts from car advertising contracts were paid to the Third Avenue Railway Company. The franchise on the Manhattan Street, One Hundred and Twenty-fifth Street, and Twelfth Avenue lines was owned and operated jointly by these companies.

All these circumstances indicate that the Third Avenue Railway Company not only controlled and dominated the Forty-second Street Railway Company through ownership of its stock, its mortgage, and its floating debt, but as matter of fact it ignored, except for bookkeeping purposes and franchise grants, the existence of the Forty-second Street Railway Company as a separate organization and carried on itself the railway operation, managed the finances and operated the cars running over those portions of the street covered by the Forty-second Street franchise, and those cars were, in fact, the cars of the Third Avenue Railway Company. Its employees were the employees of the Third Avenue Railway Company, paid by it, and subject to its control. The revenue from the operation of the cars went into the treasury of the Third Avenue Railway Company. Thus almost a complete identity of interests is established. The Forty-second Street Railway Company is only kept alive, apparently, for the technical purpose of maintaining the franchise which is its sole asset.

Many cases hold that evidence much less strong than this just outlined is enough to find that the dominant corporation is liable for injuries committed on the lines of a subsidiary, or at least that it is a question of fact for the jury to decide whether as a matter of fact it is so liable.

A case of a similar nature was decided in the Appellate Division under the title of *Summo* v. *Snare & Triest Co.* (166 App. Div. 425). That was an action to recover damages for the death of the plaintiff's husband under the Labor Law. The question was whether the defendant was liable for another corporation, The Steel and Masonry Company, which the defendant controlled and had organized for the purpose of carrying out the contracts in connection with which the death occurred. The plaintiff introduced a mass of evidence, similar to the evidence in the case at bar, to show the *modus operandi* of both corporations and their intimacy of business relations. It was argued, as it is argued by the defendant here, that, as The Steel and Masonry Company was a distinct and separate entity, the court could not go into

the circumstances of its organization. The court held, however, that the question whether the masonry company was really an independent sub-contractor or only a " dummy " agent, instrument or working tool was a question for the jury. It was also held that, although The Steel and Masonry Company, unlike the Forty-second Street Railway Company, had different officers, nevertheless identity of interest and dominance could be found.

In *Otway* v. *Snare & Triest Company* (167 App. Div. 128) it is said: " Whether the defendant corporation was plaintiff's employer in fact, instead of the Metropolitan Bridge and Construction Company, was an issue not to be determined solely by the papers introduced by the defense. The jury could consider how plaintiff had been hired, the office buildings bearing defendant's business sign and the initials cut in the tools being used, as bearing on defendant's actual relation as an employer. The trial court rightly refused to set aside a verdict for plaintiff thus supported."

So, in the case at bar, the issue was not to be determined solely by the papers introduced in evidence purporting to show that the Forty-second Street Railway Company was maintained as a separate organization. The jury should have been permitted to consider how the employees of the Forty-second Street Railway Company were hired, how they were paid, the signs on the cars, and all the other significant facts above set forth.

We may repeat as fitting this case the remarks in the opinion in *Anthony* v. *American Glucose Company* (146 N. Y. 407, 413): " The defense is not meritorious. It simply attempts to substitute circuity of action for direct responsibility, and requires us to blind our eyes with the theoretical abstraction so as to shut out the obvious and undoubted truth. We have of late refused to be always and utterly trammeled by the logic derived from corporate existence where it only serves to distort or hide the truth, and I think we should not hesitate in this case to reject the purely technical defense attempted."

The judgments should be reversed and a new trial ordered, with costs to appellants to abide the event.

CLARKE, P. J., DOWLING, MERRELL and WAGNER, JJ., concur.

In each case: Judgment reversed and new trial ordered, with costs to the appellant to abide the event.